**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MAMADOU Y. SOW<br>139 Meadow Lane<br>Philadelphia, PA 19154<br><br>Plaintiff,<br>v.<br><br>TEMPLE UNIVERSITY<br>1852 N. 10th St.<br>Philadelphia, PA 19122<br><br>Defendant. | : | CIVIL ACTION<br><br><br><br>CASE NO.: |

## CIVIL ACTION COMPLAINT

Mamadou Y. Sow ("Plaintiff"), by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Plaintiff against Temple University ("Defendant") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII - 42 U.S.C. §§ 2000, *et. seq*.), 42 U.S.C. §1981 ("Section 1981"), the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO").[1] Plaintiff asserts, *inter alia*, that he experienced unlawful workplace discrimination and retaliation, culminating in his termination from Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

[1] Plaintiff intends to amend his instant lawsuit to include claims under the PHRA/PFPO once his administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission ("PHRC") and the Philadelphia Commission on Human Relations ("PCHR"). Plaintiff's claims arising under the PHRA/PFPO for race and religious discrimination and retaliation mirror his federal claims arising under Title VII and Section 1981.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States. There lies supplemental jurisdiction over Plaintiff's state-law claims, as they arise out of the same common nucleus of operative fact as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing his Charge with the EEOC, and by filing the instant lawsuit under Title VII within ninety (90) days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant is a public research university located in Philadelphia, Pennsylvania.

9. At all times relevant herein, Defendant acted by and through its agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is Muslim and practices the religious beliefs of Islam.

12. Plaintiff was born in Guinea in West Africa.

13. Plaintiff is part of the Fulani tribe.

14. Plaintiff is Black.

15. Plaintiff was hired by Defendant on or about October 4, 2024 as a Police Officer.

16. Plaintiff was to be on probationary status for purposes of training for approximately one (1) year.

17. Prior to Plaintiff's first day on the job, he attended a meeting for all new hires at Defendant's academy.

18. Plaintiff was informed during this meeting (for new hires) that he needed to shave his beard, to which he replied that he maintained a beard for religious purposes. He was told to speak with Director of Tactical and Professional Development, Chris Willard ("Willard") about his need to maintain his beard.

19. On or about September 21, 2024, Plaintiff emailed Willard to request that he be allowed to maintain his beard and that he be permitted breaks throughout the day to pray. He told Willard he would need to pray approximately five (5) times per day for approximately five (5) minutes each time.

20. Willard approved Plaintiff's request to maintain his beard and take breaks to pray, as neither religious obligation caused any undue burden upon Defendant.

21. In or about March 2025, Plaintiff submitted a formal reasonable accommodation request to Defendant's Human Resources Department ("HR") to maintain his beard and get breaks as needed to pray because of his religion.

22. On or about April 4, 2025, Plaintiff's formal accommodation request was (again) approved by Defendant. This was of course because there was no undue burden upon Defendant.

23. In or about April of 2025, Plaintiff began working with and had become supervised by Field Training Officer Andrew Venini ("Venini"). Venini thereafter began subjecting Plaintiff to a very hostile work environment on account of his race and religion.

24. Despite Plaintiff's approved accommodations, on or about April 20, 2025, Venini interrupted Plaintiff during his prayer to tell Plaintiff he was not allowed to pray during work. In response, Plaintiff informed Venini he had an approved accommodation to take breaks to pray at work.

25. On or about April 24, 2025, Venini approached Plaintiff telling him that Deputy Police Chief Michael Smith ("Smith") wanted to meet with him.

26. When Plaintiff met with Smith on or about April 24, 2025, Plaintiff learned Venini filed a complaint about him praying while at work. Venini told Smith that Plaintiff walked away to pray without informing anyone. Plaintiff explained that was not true and that he told Sargeant Ramos ("Ramos") that he was going to pray because Venini was on the phone at that time. Ramos consented, and Plaintiff thus had approval of a supervisor.

27. Venini continued to admonish Plaintiff for not informing anyone he was praying and claimed that no one knew his whereabouts. Plaintiff continued to tell Smith that was not true

and Ramos knew where he was, that Plaintiff was communicative, and Plaintiff kept his superiors updated when he would take short prayer breaks.

28. The April 24, 2025 meeting ended without further incident. Plaintiff had however also relayed to Smith that Venini was mistreating him, negatively commenting about his accent,[2] and Venini appeared to have problems with him relative to his race or religion.

29. On or about July 18, 2025, Plaintiff and Venini responded to an incident in which they assisted the Philadelphia Police Department ("PPD").

30. When they returned to the station around 1:00 a.m. after responding to the incident with the PPD on or about July 18, 2025, Plaintiff informed Venini he was going to pray. Venini acknowledged Plaintiff's prayer break.

31. When Plaintiff took prayer breaks, he has shared with numerous levels of management and Venini that since his breaks were so short: (a) he should not be physically

---

[2] It is well established that Section 1981 prohibits racial discrimination based upon one's race/ancestry **and linguistic characteristics**. *See Chandoke v. Anheuser-Busch, Inc*., 843 F. Supp. 16, 18-20 (D.N.J. 1994)(explaining that accents relate to not only national origin discrimination but also racial discrimination); *Gupta v. Sears, Roebuck & Co*., 2007 WL 2253609, at *3 (W.D. Pa. 2007)(denying motion to dismiss because the plaintiff adequately pleaded Indian ancestry, which is a race, and a discernable accent as to claims under Section 1981); *Saleh v. Upadhyay*, 11 Fed.Appx. 241 (4th Cir. 2001)(Affirming a trial verdict in favor of a plaintiff asserting for, among other claims, a claim under 42 U.S.C § 1981 for discrimination because of his accent; *Lopez v. Indiana-Kentucky Elec. Corp*., 2006 WL 3247892 (S.D. Ind. 2006)(denying summary judgment on plaintiff's Section 1981 claim due to hostility towards his Spanish accent); *Minetos v. City University of New York*, 875 F.Supp. 1046 (S.D. N.Y. 1995)(Hispanic secretary with college's music department stated a Section 1981 cause of action by alleging that she was not allowed to be head secretary because she had a Hispanic accent); *Ortiz v. Bank of America*, 547 F.Supp. 550 (D.Cal. 1982)(Puerto Rican asserting employment discrimination because of accent states cause of action under Section 1981); *Nedeltchev v. Sheraton St. Louis City Center Hotel & Suites*, 335 Fed.Appx. 656 (8th Cir. 2009)(finding European Slavic plaintiff states a cause of action under Section 1981 for harassment because of his ancestry and accent); *Saleh v. Upadhyay*, 11 Fed.Appx. 241 (4th Cir. 2001)(affirming verdict for Nigerian born professor under Section 1981 for among other things, discrimination against his accent); *Mavrommatis v. Carey Limousine Westchester*, *Inc*., WL 2976925 (D.Conn. 2010)(holding 1981 claim satisfied by discrimination because of accent but dismissing case on other grounds); *Rumala v. New York City Transit Auth* ., 2005 WL 2076596, *8-*9 (E.D.N.Y. 2005)(construing complaint as one of ancestry, as well as national origin, when plaintiff's claims included alleged discrimination based on an accent); *Franchitti v. Bloomberg, L.P*., 2004 WL 2366183, *2-*4 (S.D.N.Y. 2004) (inferring that § 1981 claim was based on ancestry when plaintiff's accent was one of the alleged bases for discrimination).

interrupted unless it is an emergency; and (b) he turns off his phone to avoid any distractions. Of course, if any emergency arose, Plaintiff would have understood a physical interruption albeit that had never occurred in such short approximate 5-minut windows.

32. While Plaintiff was praying during his short break on or about July 18, 2025, a call came into the department. Venini left without informing Plaintiff about the call (by way of physical notification).

33. When Plaintiff was done praying, he saw a missed a call from Venini and then noticed that Venini had left the department.

34. When Plaintiff called Venini to ask where he was, Venini was very angry at Plaintiff for not responding to his call. Plaintiff explained that he was praying at that time and could not answer the phone (a fact of which Venini was already aware).

35. Plaintiff stayed at the station as he did not have a ride to respond to the call and it was too far away to walk. Moreover, Venini did not seek any additional help from Plaintiff anyway.

36. When Venini returned to the station on or about July 18, 2025, he continually berated Plaintiff for praying.

37. After being abusive towards Plaintiff on July 18, 2025 for using an approved prayer break, Venini went to Ramos to complain about Plaintiff praying during work.

38. That same shift, on or about July 18, 2025, Plaintiff and Venini drove to a gas station together. On the car ride, Venini asked Plaintiff again why he did not answer the call implying Plaintiff doesn’t really need to have his phone off during prayer breaks. It was clear that Venini was frustrated that Plaintiff was praying and did not believe that prayer was a valid reason to receive an accommodation at work.

39. During that same car ride to the gas station, Venini commented that Plaintiff's accent was "too thick" and told Plaintiff that he needed to "fix it." Plaintiff was extremely offended by this comment and explained to Venini that he could not change his accent. Venini had made comments about having a hard time understanding Plaintiff previously, which Plaintiff had relayed to other management.

40. Because of Venini's constant harassment and antagonism about Plaintiff's religious accommodation and comments about his accent, Plaintiff sent an email to Willard complaining of discrimination as follows:



TFW 08:27

Good morning Mam, this is Sow # 2397 please tell Officer Venini # 2219 to stop harassing me about my prayers, every time he keeps telling me what to do while performing my religious duties. While I am praying my focus is and must be on the prayer. He is doing too much and he needs to stop. He keeps asking me same questions over and over. I believe he is trying to find ways out to stop me from praying while on duty. He even asked me do you pray on your day off five times every day ? I feel being insulted. know he thinks the facts I have an accent when I speak English he believes I don't understand his rhetoric behavior. Please tell him to stop. I give him respect all the time but he needs to respect my religious beliefs.

Get Outlook for iOS

41. On or about July 21, 2025, Willard responded to Plaintiff's email that someone would speak with him about it "in more detail." However, no one ever spoke to Plaintiff about his very serious discrimination complaint.

42. By late July of 2025, Plaintiff was then transferred to work under Field Training Officer Christopher Peralta ("Peralta").

43. Plaintiff took breaks to pray without issue while working under the supervision of Peralta, just as Plaintiff had done without problems before working under Venini.

44. It was clear to Plaintiff that taking breaks to pray was not an issue for anyone but Venini who was blatantly discriminatory towards Plaintiff's ethnic and linguistic characteristics and his religion (or religious accommodation needs).

45. On or about August 7, 2025, Captains Terry King ("King") and James Hennigan ("Hennigan") called Plaintiff to a meeting to ask him questions about Venini's July 18, 2025 complaint to Ramos. They questioned why Plaintiff did not respond to the call with Venini. Plaintiff explained he was praying per his religious accommodation and that Venini left without informing him about the call, physically interrupting him, or waiting a few minutes for prayer completion.

46. Defendant then terminated Plaintiff's employment on or about August 15, 2025 for failing to answer the call on or about July 18, 2025 (a time during which he was praying per his approved religious accommodation).

47. It was disgusting, egregious, and illustrative of reckless indifference that Plaintiff: (1) would be terminated on account of a complaining supervisor who was knowingly harassing Plaintiff for prayer and racial issues; (2) after ignoring Plaintiff's complaints of discrimination;[3]

[3] Plaintiff has only referenced some complaints made in this lawsuit for illustrative purposes, not all complaints he made while employed.

and (3) for an issue almost a month earlier after Plaintiff had been working well under a different supervisor.

48. Based on the foregoing, Plaintiff believes that he was discriminated against, subjected to retaliation, and ultimately terminated by Defendant for discriminatory and/or retaliatory reasons under Title VII and Section 1981.

**COUNT I**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Religious Discrimination; [2] Race / National Origin Discrimination; [3] Retaliation; and [4] Hostile Work Environment)**

49. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50. Plaintiff was subjected to a hostile work environment when working under Venini and terminated because of his race, religion, and national origin, which constitutes unlawful discrimination against him (as well as not being fully accommodated for religious purposes).

51. Plaintiff was also terminated in retaliation for his complaints of discrimination and for seeking religious accommodations, which constitute unlawful retaliation.

52. Plaintiff asserts that Defendant terminated his employment in violation of Title VII after he endured a hostile work environment under Venini.

**COUNT II**
**Violation of 42 U.S.C. §1981**
**([1] Race/ Ethnic / Ancestral Discrimination; and [2] Retaliation)**

53. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

54. Plaintiff was subjected to discrimination based on his race/ethnicity/ancestry and engagement in protected activity.

55. Plaintiff believes and therefore avers that he was terminated pretextually because of his race/ethnicity/ancestry.

56. Moreover, Plaintiff was subjected to retaliation for engaging in protected activity as he was terminated in close temporal proximity to complaining about discrimination as outlined in this lawsuit.

57. These actions as aforesaid constitute violations of §1981.

**WHEREFORE**, Plaintiff prays that this Court enters an Order providing that:

A. Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered retaliation/discrimination at the hands of Defendant until the date of verdict;

C. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

E. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

F. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
akarpf@karpf-law.com
(215) 639-0801

Dated: September 2, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Mamadou Y. Sow | : | CIVIL ACTION |
| v. | : | |
| Temple University | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (x )

| | | |
|---|---|---|
| 9/2/2026 | [signature] | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Defendants place of business

***RELATED CASE IF ANY:*** Case Number:__________ Judge:__________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

***A. Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:__________

**B. *Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):__________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*__________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

SOW, MAMADOU Y.

(b) County of Residence of First Listed Plaintiff: Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

(c) Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS

TEMPLE UNIVERSITY

County of Residence of First Listed Defendant: Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [X] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - mployment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
Title VII (42USC2000); Section 1981 (42USC1981)

Brief description of cause:
Violations of Title VII, Section 1981, PHRA and PFPO.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*: JUDGE ____ DOCKET NUMBER ____

DATE 9/2/2026

SIGNATURE OF ATTORNEY OF RECORD [signature]

**FOR OFFICE USE ONLY**

RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____